## THE ANSGAR.

### THE PHILADELPHIA.

(District Court, E. D. Pennsylvania. April 18, 1902.)

COLLISION—STEAMSHIP AND PILOT BOAT—FAILURE OF SHIP TO STOP HEADWAY TO TAKE ON PILOT.

A pilot boat in approaching in the night a steamship which has signaled her desire for a pilot is justified in acting on the supposition that the ship has stopped her headway, as it is her duty to do, in order that the pilot may be put on board with safety and convenience, and where a collision results wholly from the fact that the ship has not done so, although she has had sufficient time, she will be held solely in fault.

In Admiralty. Suit for collision.

Horace L. Cheyney and John F. Lewis, for the Philadelphia.
Henry R. Edmunds, for the Ansgar.

J. B. McPHERSON, District Judge. The collision in controversy occurred under the following circumstances: About 2 o'clock in the morning of August 21, 1901, the steam pilot boat Philadelphia was cruising outside the capes of the Delaware river, looking for incoming vessels that might need the services of a pilot. She was properly manned and supplied with the required lights, set and burning, and was maintaining an efficient lookout. The night was dark, but clear, and lights could be seen several miles away. The Norwegian steamship Ansgar was approaching the capes upon a westwardly course, the course of the pilot boat being about east, and soon after sighting each other the two vessels exchanged the signals that indicated the Ansgar's desire for a pilot. At this time the Philadelphia was to the north of the Ansgar, and each vessel, therefore, was showing its green light to the other. After the interchange of signals it became the duty of the Ansgar to stop her engines and her headway, in order that the operation of putting the pilot on board might be safely and conveniently conducted. It was the duty of the pilot boat to approach the Ansgar as near as might be safe, and to put the pilot on board by the use of a small skiff. The wind was blowing lightly from the southwest, so that the starboard side of the Ansgar was the lee side, and upon that side it was proper and customary that the pilot should be taken on board. Accordingly the pilot boat put her helm hard a-port, and began a turning maneuver that was intended to bring her slightly above the bow of the Ansgar, from which point she intended to drop the skiff to the steamship. This maneuver was in accordance with the established practice, and was entirely proper. As already stated, the night was clear, but dark, and, while the lights of the vessels were clearly visible to each other, it was not easy for the pilot boat to distinguish whether the Ansgar was moving through the water or not. In fact, although the steamship's engines were stopped when the vessels were about a quarter of a mile away, she did not stop her headway by reversing, and therefore continued to move through the water under the momentum already acquired. The pilot boat approached under the belief, which she was justified in entertaining, that the Ansgar had stopped her headway, and only discovered that the fact was otherwise when she was too near to avert the collision. Her engines were promptly reversed, and her helm put hard a-port, but in spite of all that could be done the port bow of the pilot boat struck the steamship upon the starboard side near the bow, a second collision taking place immediately afterwards between the starboard quarter of the steamship and the port quarter of the pilot boat.

Under these circumstances, it seems to me that the Ansgar was solely at fault, her fault consisting in not stopping her way in time, so that the pilot might be put aboard with safety and convenience. The point seems to me to be expressly decided in The City of Washington, 92 U. S. 31, 23 L. Ed. 600; that case deciding, also, that the action of a pilot boat in taking a station in front of the vessel to be boarded is justified by custom and supported by good reasons.

Decrees may be entered in accordance with this opinion.